**In the Matter of Robert J. STELIGA, Lois E. Steliga, Debtor.**

**John E. FISHER and Kenneth J. Parlato, Plaintiffs,**

v.

**Robert J. STELIGA, Defendant.**

**Bankruptcy No. 87–02077. Adv. No. 87–0231.**

United States Bankruptcy Court, E.D. Wisconsin.

July 13, 1988.

Robert N. Myeroff, Milwaukee, Wis., for plaintiffs.

Forrest B. Lammiman, Kravit, Waisbren & DeBruin, Milwaukee, Wis., for Robert J. Steliga.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

Plaintiffs filed this adversary proceeding on August 10, 1987, seeking a determination that Robert Steliga's failure to provide them with an opportunity to renew a government land oil lease created a nondischargeable debt under § 523(a)(4) of the Bankruptcy Code. The debtor answered on September 1, 1987, and moved for dismissal claiming, inter alia, that plaintiffs' complaint failed to state a claim upon which relief may be granted. This matter is now before the court on the parties' cross motions for summary judgment.

### FACTS

On or about January 1, 1983, the plaintiffs, the debtors, and four others executed a partnership agreement and formed B.D. M. Investment Company. The avowed purposes of the partnership were the purchase, ownership and sale of oil and gas leases in the continental United States and Alaska. However, only one lease of 1200 acres was acquired from the United States Department of Interior, Bureau of Land Management.

Steliga, an accountant, was actively involved in the partnership affairs, especially in the preparation of financial reports. In correspondence with various third parties he indicated that he was the managing

partner. However, Steliga was not named managing partner in the original partnership agreement or in an amendment thereto. Furthermore, the partners never voted that he should assume that role.

From mid 1984 forward, the partnership did not have any funds or bank accounts. Thus, in 1984, 1985 and 1986, it utilized the following method to renew its lease with the Bureau of Land Management. The Bureau of Land Management would send the renewal notice to partner James Bojar, who would forward the notice to Steliga. Steliga would then send a letter and a copy of the renewal notice to each of the other partners, requesting that they send him a check, made payable to the Bureau of Land Management, for their share of the $2,400 lease payment. Upon receipt of all the checks, Steliga would forward them to the Bureau of Land Management along with the appropriate renewal documents.

On or about November 4, 1986, Steliga sent a letter to each of the partners requesting that each of them send him their renewal check before the lease payment deadline of December 1, 1986. The letter stated:

> If you feel we should renew the rent, please send a check for $300 for your portion. If the majority does not feel they want to renew, I guess the lease would just expire.
>
> Everyone is aware of the oil and gas problems in the country today and if the majority should opt to be out, I will return any checks that I have received. (Stipulation of Facts, Exhibit O).

Of the eight partners, only the plaintiffs sent checks for their portion of the lease payment. Plaintiff Kenneth Parlatto's wife also sent Steliga a note stating, "Bob —here's our check for the rent due for the land lease. Let us know what the majority decides as we might want to keep it." (Stipulation of Facts, Exhibit P).

Steliga did not notify either of the plaintiffs, prior to the December 1, 1986, deadline, that the other partners had not sent checks for their portion of the lease payments. On the other hand, the plaintiffs also failed to contact the partners to ascertain whether they wanted to keep the lease.

In due course, the renewal deadline passed and the Bureau of Land Management sent the partnership a notice of termination and procedures for reinstating the lease, dated January 8, 1987. Thereafter, Steliga received additional checks which he forwarded to the Bureau of Land Management in late January in an unsuccessful attempt to renew the lease.[1]

## DISCUSSION

This adversary proceeding is grounded on the assertion that Steliga acted in a fiduciary capacity when he collected and forwarded the lease payments owed by B.D.M. Investment Company to the Bureau of Land Management; that he breached a duty to plaintiffs by failing to notify them that all partners had not timely sent him their lease payments; and that he, thereby, deprived the plaintiffs of the opportunity to take over the lease.

Section 523(a)(4) of the Bankruptcy Code states that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity. The Seventh Circuit Court of Appeals has recently stated "To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(4), a creditor must establish that: 1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987) (citations omitted). A careful review of the complaint and supporting briefs leads the court to conclude that the plaintiffs are not alleging a duty owed to the partnership or the plaintiffs as partners. Instead, they are alleging a special duty owed to them alone. The plaintiffs state

---

**1.** The stipulation did not indicate whether the partnership met all the reinstatement requirements or whether the checks sent to the Bureau of Land Management were sufficient to cover the $500 reinstatement fee and the $130 cost of publishing. Notice of Proposed Reinstatement in the Federal Register. (See Exhibit Q).

that "[t]he defendant, Robert J. Steliga, failed to provide the plaintiffs with an opportunity to take over the payments for the partners who failed to timely send in their pro rata share to Mr. Steliga." (Brief on Behalf of the Plaintiffs, John E. Fisher and Kenneth J. Parlato at 5). The plaintiffs have failed to cite and the court is not aware of any authority which holds that one partner owes a duty to assist another partner in acquiring individual ownership of partnership property.

Although WIS.STAT. § 178.18(1) (1985–86), which is applicable to this case, makes a partner accountable as a fiduciary, the duty is owed to the partnership, not to the individual partners. Section 178.18(1) also makes a partner "a trustee of any profits derived by him without consent of the other partner from any transaction connected with ... the partnership or from any use by him of its property." However, nothing in the complaint or the plaintiffs' briefs indicates that Steliga profited from the lapse of the lease.

The court, therefore, concludes that the plaintiffs have failed to show that Steliga was their "special" fiduciary or to prove the existence of an express trust necessary to sustain a complaint under § 523(a)(4). Furthermore, it is inconceivable to this court that the plaintiffs can in good conscience contend that Steliga is obligated to assist them in acquiring partnership property. Such a proposition runs counter to all notions of partnership loyalty.

For the foregoing reasons, the plaintiffs' motion for summary judgment must be denied and the debtor's cross motion for summary judgment must be granted.